IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02506-REB-BNB

RANDY KAY McARTHUR,

Petitioner,

v.

B. DAVIS, Warden,

Respondent.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Doc. #1] (the "Application") and the **Application for a Writ of Habeas Corpus under 18 U.S.C. § 2241 - Memorandum in Support** [Doc. #2] (the "Application Brief"), filed October 26, 2009, by Randy Kay McArthur (the "petitioner"). I respectfully RECOMMEND that the Application be DENIED.

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

As a preliminary matter, the respondent asserts that the court lacks subject matter jurisdiction over the Application because the claim raised does not affect the duration of the petitioner's confinement. The petitioner is challenging the execution of his sentence. Challenges to the execution of a sentence are properly raised in a § 2241 petition. Davis v.

Roberts, 425 F.3d 830, 833 (10th Cir. 2005); Mathison v. Davis, No. 10-1208, 2010 WL 3965906, at *1 (10th Cir. Oct. 12, 2010).

The petitioner is currently incarcerated by the Bureau of Prisons ("BOP") at the Federal Prison Camp in Florence, Colorado. He is serving an 87 month sentence with a 48 month term of supervised release for Bank Fraud (in violation of 18 U.S.C. § 1344) and Aiding and Abetting (in violation of 18 U.S.C. § 2). The petitioner's projected release date is August 14, 2011, via good time conduct release.

The petitioner applied to his Unit Team for the maximum allowable halfway house[1] placement pursuant to the Second Chance Act of 2007, 18 U.S.C. §§ 3621 and 3624. Section 3624 provides in pertinent part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Prior to the 2007 amendments, section 3624(c) limited the time for inmate eligibility for transfer to a halfway house to the lesser of ten percent of his sentence or the final six months of his sentence. 18 U.S.C. § 3624(c) (2000).

Placement in a halfway house must be conducted in a manner consistent with 18 U.S.C. § 3621(b). 18 U.S.C. § 3624(c)(6)(A). Section 3621(b) governs the transfer of inmates to other facilities, including halfway houses:

---

[1]Halfway houses are also called community correctional facilities, community correction centers ("CCCs"), and residential re-entry centers ("RRCs").

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Placement in a halfway house must also be "determined on an individual basis" and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. §§ 3624(c)(6)(B) and (C).

After the enactment of the Second Chance Act of 2007, the BOP issued two interpretive memoranda (the "Memoranda") "providing guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations." Garza v. Davis, 596 F.3d 1198, 1202 (10th Cir. 2010). The Tenth Circuit Court of Appeals has described the Memoranda as follows:

The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement ... are no longer applicable, and must no longer be followed." Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates). In relevant part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review. Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or

extraordinary circumstances justifying such placement, and the
Regional Director concurs."

Id. at 1202-03 (internal citations omitted); *Response*, Ex. A-1, Attachments 2 and 3.

On April 2, 2009, the petitioner was reviewed for halfway house placement pursuant to the Second Chance Act. The Unit Team staff determined that a recommendation of 180 days of pre-release halfway house placement was of sufficient duration to assist the petitioner with his transition back into the community. *Response to Petition for Writ of Habeas Corpus* [Doc. #12] (the "Response"), Ex. A-1, ¶ 11 and Attachment 4. The petitioner was notified of the decision. Id. at Attachment 5.

The petitioner claims that the BOP "abused its discretion in determining that Petitioner's halfway house placement would be for only 6 months rather than the 12 for which he is qualified." *Application*, p. 3. Specifically, he claims that the Unit Team staff's decision was not based on an objective consideration of his qualifications and reentry needs, but on "a memorandum from the General Counsel of the BOP instructing staff that no prisoner should be granted more than 6 months except in rare and unspecified instances." Id.; *Application Brief*, p. 3. The petitioner further claims that "the memorandum and any reliance upon it . . . is contrary to the mandate set out in the Second Chance Act of 2007." Id.

The petitioner's request for halfway house placement was provided with an individualized review of the five factors listed in 18 U.S.C. § 3621(b). *Response to Petition for Writ of Habeas Corpus* [Doc. #12] (the "Response"), Ex. A-1, ¶ 11 and Attachment 4. The Unit Team staff considered the resources of the facility contemplated, including resources related to "Job search, Transportation, Clothing assistance, Drivers license, Housing search, Drug/Alcohol aftercare, Medical resources, Education Programs, and Mental Health aftercare programs." Id.

Staff further considered the nature and circumstances of the petitioner's offense, noting his conviction for Bank Fraud and Aiding and Abetting.  Id.

Staff also considered the history and characteristics of the petitioner and noted that he had participated in several educational and vocational programs; had completed $60.00 in quarterly payments as a part of the Financial Responsibility Program; his work performance was "satisfactory-good"; he completed the Institutional Release Preparation Program on November 4, 2008; his disciplinary history was clear; and he had no prior criminal history.  Id.

Staff considered statements by the sentencing court which ordered $2,000,000 restitution to be paid jointly with a co-defendant; ordered an additional $1,000,000 to be paid by the petitioner; and recommended designation to an institution in Nevada or close to Utah.  Id.

Staff considered the fact that the petitioner was sentenced to 87 months imprisonment, which exceeds the sentencing guideline range of 63-78 months.  Id.

Finally, staff considered the following resources of the petitioner: family support (19 visitations on the list); life skills (self-admitted); residence (none in his name according to the Presentence Investigation Report); financial resources (regular deposits); and general job skills (employed as a bank cashier from 1977 to 2004).  Id.

The review form states that, based on careful consideration of the information provided above, the petitioner "appears to have sufficient resources & skills to reintegrate into the community successfully within 180 days."  Id.  Thus, the Unit Team staff determined the petitioner's request for halfway house placement in compliance with the Second Chance Act of 2007.

As to the petitioner's challenge to the BOP's interpretive Memoranda, the Memoranda do not conflict with the Second Chance Act. Ciocchetti v. Wiley, 358 Fed.Appx. 20, 24 2009 WL 4918253 (10th Cir. December 22, 2009). In Ciocchetti, the petitioner argued that the BOP was categorically denying inmates' requests for transfers to halfway houses. The petitioner admitted that he had not exhausted his administrative remedies, but argued that it would be futile for him to request a transfer to a halfway house because the Memoranda indicated that his request would be categorically denied on the basis that he had more than six months remaining on his sentence. In response to the petitioner's argument, the circuit court determined that the Memoranda did not conflict with the Second Chance Act:

> As its memoranda clearly indicate, the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods of time exceeding six months; instructing BOP staff to individually consider each request for a transfer based on the factors set forth in § 3621(b) regardless of the time remaining on the requesting inmate's sentence. Further, the fact that the regional BOP director must approve any inmate's assignment to a RRC or CCC which is greater than six months in duration, is of no consequence because this requirement in no way demonstrates a policy of categorical denial.

Id.

In Bun v. Wiley, 351 Fed.Appx. 267, 268, 2009 WL 3437831 (10th Cir. Oct. 27, 2009), the circuit court addressed a similar challenge to the Memoranda:

> Bun's argument that the new regulations are invalid also lacks merit. He contends that two memoranda concerning the new regulations must be invalidated "because they conflict with Congressional intent in enacting [18 U.S.C. §§ 3621(b) and 3624(c) ]." However, as noted by the district court, these memoranda actually support Bun's contentions that inmates are eligible to be transferred to CCCs at any time and are authorized to serve up to twelve months in an RRC. The first memorandum concerns inmate requests for transfer to CCCs and states that

> inmates are "legally eligible" to be placed in CCCs at any time during their prison sentence. The second memorandum recognizes that while the maximum pre-release RRC placement is twelve months, "Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." Before granting an RRC placement greater than six months, BOP staff are required to obtain the permission of the Regional Director. Contrary to Bun's contentions, this requirement does not run afoul of § 3624(c). That statute does not entitle prisoners to a twelve-month placement in an RRC. See § 3624(c)(1).

Therefore, any reliance by the Unit Team staff on the Memoranda in determining the petitioner's placement was not contrary to the mandate set forth in the Second Chance Act of 2007 and was not an abuse of discretion.

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated October 29, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge